IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DEBORAH ELLIS, et al.**                                                                   **PLAINTIFFS**

**v.**                                                                   **CIVIL ACTION NO.: 4:07CV81**

**MISSISSIPPI DEPARTMENT OF HEALTH, et al.**                     **DEFENDANTS**

## OPINION ON MOTION TO DISMISS

Plaintiffs Deborah Ellis, Jennifer Brown, M.T. Person III, and Sindie House filed suit in Leflore County Circuit Court alleging various constitutional violations as grounds for a claim under 42 U.S.C. § 1983. They allege that the Mississippi Department of Health ("MDH") and their employees conducted three illegal searches of the Susie M. Brooks Child Care Facility. Specifically, the Plaintiffs allege that the agents had no probable cause to suspect child abuse was occurring in their facility, other than anonymous phone calls, and that their searches were thus illegal. Named as defendants are MDH, Theresa Patton, Cynthia Lesure, Tina Moore, and John Does 1-10, brought in their official capacity, as well as their individual capacity.

Defendants brought this Motion to Dismiss on the basis that a state agency is not liable under 42 U.S.C. § 1983, and as officials acting within the course and scope of their governmental duties, the individuals are shielded by qualified immunity. Therefore, they aver, no action can be maintained against these defendants. After reviewing all pleadings, motions, and upon due consideration, the Court finds that this motion is well taken and should be granted.

### A. *Factual Background*

The Plaintiffs' complaint alleges violations of their First, Fourth, Fifth, and Fourteenth Amendment rights for three supposed unconstitutional searches of the Susie M. Brooks Child Care Facility. Plaintiffs first contend that on January 29, 2004, Theresa Patton and Cynthia Lesure, acting

in their capacity as MDH child care licensing officials, came to the Susie M. Brooks Child Care Facility in response to an "anonymous phone call" that the Director, Sindie House, had within the previous several days allegedly abused two children enrolled at the facility. Pursuant to gaining entry onto the premises, the child abuse charge was allegedly investigated "by search and seizure and interrogation." *Complaint*, ¶ 6. The Plaintiffs allege that during that initial child abuse investigation, Sindie House was unlawfully taken into custody for interrogation and other Plaintiffs were threatened with jail time unless they agreed to testify against Sindie House. The Plaintiffs maintain that after the child abuse investigation was complete, the licensing officials then engaged in a general regulatory inspection. The final result of the regulatory inspection was a $350 fine for improper discipline for having a child under the age of three years in "time out." No formal abuse charges were ever made stemming from this investigation.

The second incident complained of by the Plaintiffs involved Alfred Dean King, a private investigator hired by Plaintiff Deborah Ellis. On May 13, 2004, King called Theresa Patton at the MDH to inquire as to how a citizen would make a complaint of child abuse against a day care provider. She allegedly informed him that a complaint could be made anonymously or by giving a name. King additionally asked whether MDH had any current complaints against any child care providers in Leflore County, to which Ms. Patton replied that MDH was in the process of investigating the Susie M. Brooks Child Care Facility. The next day, Patton, along with three other agency employees (Does 1, 2, 3) arrived at the Susie M. Brooks Child Care Facility to investigate an anonymous child abuse complaint received the day before. The Plaintiffs contend that MDH and its officers illegally investigated the Susie M. Brooks Child Care Facility based on the telephone call from their private investigator who did not made any allegation of child abuse at that facility. Patton

2

charged the Susie M. Brooks Child Care Facility with an administrative violation during that incident.

The third incident occurred on December 14, 2005, when Tina Moore appeared at the Susie M. Brooks Child Care Facility with two other MDH employees (Does 4 and 5). She announced she was there to investigate a child abuse charge that a care giver had struck a child. She stated the complainant parent asked to remain anonymous. She further requested the personnel file of the alleged abuser, Sandifer, the personnel file of Deborah Ellis and the facility's file on the child allegedly abused. After a brief interrogation of the alleged abuser, Deborah Ellis asked the investigators to leave, and they complied with this request. No formal child abuse charges were ever made.

The Plaintiffs specifically allege that the three searches were unconstitutional or unlawful for the following reasons: (1) the defendants had no statutory authority to conduct a search or investigation into an allegation of child abuse unless and until a referral is made to MDH by the Mississippi Department of Human Services; (2) no search warrant was obtained for the criminal charge of "child abuse" against the Plaintiffs; and (3) an "anonymous" phone call is not probable cause for the issuance of a criminal search warrant. Moreover, the Plaintiffs contend that the MDH regulations and any administrative search pursuant thereto violate the Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, in the following particulars: the regulation does not carefully limit the time, place, and scope of the search and, therefore, does not limit the discretion of the inspecting officers.

## B. *Discussion and Analysis*

I. Standard for a Motion to Dismiss

"A Rule 12(b)(6) motion is disfavored, and it is rarely granted. Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986); Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981). Dismissal is never warranted because the court believes the plaintiff is unlikely to prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Even if it appears an almost certainty that the facts alleged cannot be proved to support the claim, the complaint cannot be dismissed so long as the complaint states a claim. Clark, 794 F.2d at 970; Boudeloche v. Grow Chem. Coatings Corp., 728 F.2d 759, 762 (5th Cir. 1984). "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." Clark, 794 F.2d at 970; see also Mahone v. Addicks Util. Dist., 836 F.2d 921, 926 (5th Cir. 1988); United States v. Uvalde Consol. Indep. Sch. Dist., 625 F.2d 547, 549 (5th Cir. 1980), *cert. denied*, 451 U.S. 1002, 68 L. Ed. 2d 858, 101 S. Ct. 2341 (1981). Dismissal is appropriate only when the court accepts as true all well-pled allegations of fact and, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Thomas v. Smith, 897 F.2d 154, 156 (5th Cir. 1989) (quoting Conley v. Gibson, 355 U.S. 41, 45-6, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); see Mahone, 836 F.2d at 926; McLean v. International Harvester, 817 F.2d 1214, 1217 n.3 (5th Cir. 1987); Jones v. United States, 729 F.2d 326, 330 (5th Cir. 1984). While dismissal under Rule 12(b)(6) ordinarily is determined by whether the facts alleged, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. Clark, 794 F.2d at 970; Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S. Ct. 729, 74 L. Ed. 2d 953 (1983).

II. Immunity under Section 1983

The Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*(a) Mississippi Department of Health*

The Mississippi Department of Health asserts it is immune from suit based on its relation as an arm of the State. Indeed, the United States Supreme Court has recognized that a federal court § 1983 suit against a state for any type of relief is precluded as that entity is not a "person" as required by the statute, a ruling that has been extended to state agencies as well. Alabama v. Pugh, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978). Moreover, in Will v. Michigan Department of State Police, the United States Supreme Court established that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court. 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Plaintiffs contend that the Defendants have waived their Eleventh Amendment immunity by removing the case from state to federal court and cite Lapides v. Board of Regents as support for this position. 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). Indeed, the Supreme Court noted in Lapides that a State, in removing a case from state to federal does waive the protections of the Eleventh Amendment. However, the issue here is not whether the MDH is covered under Eleventh Amendment immunity, but rather, are they able to be sued under § 1983. Therefore, the first inquiry

5

is whether the Mississippi Department of Health is considered an arm of the State.

The Fifth Circuit has held that to determine whether an entity is an arm of the state, the court must consider the following: (1) the state law characterization of the entity; (2) the source of the entity's funding; (3) the degree of the entity's local autonomy; (4) whether the entity is concerned primarily with state or local problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has a right to hold and use the property. Skelton v. Camp, 234 F.3d 292, 297 (5th Cir. 2000) (citing Clark v. Tarrant County, Texas, 798 F.2d 736, 744-45 (1986) (outlining factors to determine whether an entity is an arm of state)). This test is commonly referred to as the "Clark" test and the Fifth Circuit has informed the lower courts that "[t]he second factor is usually accorded the most weight." Skelton, 234 F.3d at 297-98 (citing Delahoussaye v. City of New Iberia, 937 F.2d 144, 147-48 (5th Cir. 1991)).

The statutory framework for the Mississippi Department of Health is found at Mississippi Code Section 43-3-15, *et. seq.* (Rev. 2007). That statute recognizes that the Mississippi Department of Health is an extension of the State Board of Health and is to be the enforcement mechanism of the public health policies and programs instituted by the State Board of Health. See Miss. Code Ann. § 43-3-15(5)(a). Indeed, a statutory role of the State Board of Health is to formulate the policy of the State Department of Health regarding public health matters. Miss. Code Ann. § 43-3-15(1)(b)(I). Section 43-3-15(5)(a) specifically enumerates several areas in which the Mississippi Department of Health administers programs for the State Board of Health, including, but not limited to, maternal and child health, control of communicable diseases, and child care licensure. Therefore, the statutory characterization of the Mississippi Department of Health is as an administrative and implementation department working in conjunction with the State Board of Health.

Section 43-20-12 notes that all fees and penalties collected by MDH in their capacity as licensing agents of child care facilities are deposited into a "special fund" created in the State Treasury which is used for the implementation and administration of the licensing statutes. Therefore, the court finds that MDH is funded through the State Treasury, the state legislature, and by fees from those seeking to legally operate child care facilities within the State.

The Child Care Licensing Law, found at Mississippi Code § 43-20-1, *et. seq.*, characterizes the MDH as a licensing agency. As a licensing agency under the Mississippi Code, MDH is authorized to promulgate rules and regulations concerning the licensing and regulation of child care facilities. Miss. Code Ann. § 43-20-8(1)(a). Moreover, MDH has the unfettered authority to issue, deny, suspend or revoke licenses, set and collect fees and penalties, and have "such other powers as may be required to carry out the provisions of [the Child Care Licensing Laws]."

The entity at issue here, a licensing agent of child care facilities, is primarily concerned with state-wide problems. As stated above, MDH has been charged with promulgating regulations and rules for the licensing and regulation of child care facilities. Additionally, they wield state-wide power over the licensees once they are issued. More generally, the MDH is given wide latitude in the enforcement and administration of State Board of Health programs. No statutory reference is made to the locality of those programs, but since the State Board of Health is a state-wide organization, factor four of the <u>Clark</u> test is satisfied that MDH is concerned primarily with state-wide problems.

Mississippi Code § 43-20-8(7) states that under this statutory scheme for the licensing of child care facilities, "[t]he licensing agency and its agents, officers, employees, attorneys and

7

representatives shall not be held civilly liable for any findings, recommendations or actions taken under this section." Clearly, in their capacity as licensing agents, the Mississippi State Legislature has precluded MDH from suit under the Child Care Licensing Laws. Moreover, in its role as investigator of child care facilities, the Legislature has specifically precluded suit against the MDH noting that "[t]he Department of Health shall not be held civilly liable" for releasing information obtained as a result of an investigation of abuse. Miss. Code Ann. § 43-21-257(4). Therefore, statutory limits on MDH's liability have been established to civilly protect that institution.

The Mississippi Department of Health's authority to hold and use property is not expressly addressed in the statutes mentioned above. MDH is allowed to charge and collect a fee and any necessary costs incurred by the licensing agency for criminal history record checks. Licensing fees paid to the MDH under § 43-20-11 and all fees and penalties are deposited into the State Treasury and are to be used for the "implementation and administration" of the Child Care Licensing Laws when appropriated by the Legislature. Miss. Code Ann. § 43-20-12. We find that MDH has abrogated its right to hold and use property to the State Treasury.

MDH brings forth other case law holding other entities as "arms of the State" and also alleges that MDH has implicitly been recognized as an arm of the State by a federal court. See O'Neal v. Miss. Board of Nursing, 113 F.3d 62 (5th Cir. 1997) (Mississippi Board of Nursing); Cooley v. Miss. Dep't of Transp., 96 F. Supp. 2d 565 (S.D. Miss. 2000) (Mississippi Department of Transportation); Kinnison v. Miss. Dep't of Wildlife, Fisheries, and Parks, 990 F. Supp. 481 (S.D. Miss. 1998) (Mississippi Department of Wildlife, Fisheries, and Parks); King v. Miss. Hwy. Patrol, 827 F. Supp. 402 (S.D. Miss. 1993) (Mississippi Highway Patrol); Scanlon v. Dep't of Mental Health, 828 F. Supp. 421 (S.D. Miss. 1993) (Mississippi Department of Mental Health); Chrissy F. V. Miss. Dep't

of Public Welfare, 780 F. Supp. 1104 (S.D. Miss. 1991) (Mississippi Department of Public Welfare); Davis v. State Dep't of Health, 744 F. Supp. 756, 758 n.1 (S.D. Miss. 1990) (recognizing by admission of plaintiff that claims against MDH and individuals in official capacity were not viable under Section 1983).

This Court, therefore, finds as a result of the Clark analysis undertaken above, and in recognition of case authority approving same, that MDH is an "arm of the State" for § 1983 immunity purposes.

Because the Court finds here that the Mississippi Department of Health is an "arm of the State" in accord with Skelton, 234 F.3d 292, and Clark, 798 F.2d 736, the entity is not subject to suit under § 1983, and is therefore, dismissed from this suit.

*(b) Official Capacity Claims against State Employees*

Next, we consider whether MDH employees are equally entitled to this defense. In West v. Atkins, the United States Supreme Court stated that "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." 487 U.S. 42, 50, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). The Plaintiffs in this action have brought suit against the Defendants in their individual, as well as their official capacity. In Kentucky v. Graham, the Supreme Court explained the difference between individual capacity claims and official capacity claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against that entity. It is *not* a suit against the official personally,

9

> for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgement in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (internal citations omitted). Therefore, a suit against a governmental employee in their official capacity is "no different from a suit against the State itself." Will, 491 U.S. at 71, 109 S. Ct. 2304.

Here, the Plaintiffs have sued Theresa Patton, Cynthia Lesure, Tina Moore, and Does 1-10 in their official capacities as employees of the Mississippi Department of Health. Because these defendants are sued in their official capacities as employees of the Mississippi State Department of Health, they are entitled to the same immunity under § 1983 available to MDH. See Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (noting that "the only immunities available to the defendant in an official-capacity action are those that the government entity possesses"). Therefore, suit cannot be maintained against Patton, Lesure, Moore, and Does 1-10 in their official capacity and they are hereby dismissed from this suit.

*(c) Individual Capacity Claims of State Employees*

The parties, however, cannot hide behind sovereign immunity as defendants in their individual capacities. In Hafer v. Melo, the Supreme Court unanimously held that state officials sued for damages in their personal capacities are "persons" within the meaning of § 1983, even when the claim is based upon the carrying out of official responsibilities. 502 U.S. 21, 112 S.Ct. 358. The Court rejected the novel proposition that the fact that the official acted under public authority, which fulfills the color of law requirement, insulates the official from personal liability. However, officials sued under § 1983 in their personal capacities may be able to assert a qualified immunity defense.

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Under this test, an official who acted unconstitutionally, but did not violate clearly established federal law will be found to have acted in an objectively reasonable manner and will be protected from personal liability by qualified immunity. In Wyatt v. Cole, the Supreme Court held that Harlow qualified immunity applies to governmental officials "where it is necessary to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damage suits from entering public service." 504 U.S. 158, 167, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). The Court further explained that the defense is designed to "protect the public at large, not to benefit its agents." Id. at 168.

Although qualified immunity is an affirmative defense, *see* Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980), once the defendant pleads qualified immunity, the burden shifts to the plaintiff to show that the right allegedly violated was clearly established at the time of the challenged conduct. See Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997) (where § 1983 defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, plaintiff has the burden to rebut qualified immunity defense by establishing the violation of clearly established law). For a right to be clearly established, "there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law." Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1079 (5th Cir. 1995). Indeed, "the determination whether a right is 'clearly established' is a more

particularized inquiry" that focuses on whether a reasonable official would know that the specific act in question was unlawful. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Plaintiffs allege here that the Defendants have violated their First, Fourth, Fifth, and Fourteenth Amendment rights. Specifically, the Plaintiffs assert that the Defendants committed an unreasonable search and seizure in violation of the Fourth Amendment's requirement of probable cause prior to search and seizure. "Discretionary duties enjoying a qualified immunity are duties positively imposed by law but which are dependent upon an officer's judgment or discretion." Bankston v. Pass Rd. Tire Center, Inc., 611 So. 2d 998, 1008-09 (Miss. 1992). The Plaintiffs assert that the actions taken by the Defendants were not "duties positively imposed by law." Indeed, they contend that the MDH and its employees are not statutorily authorized to investigate child abuse allegations.

We note here that under Mississippi Code Section 43-20-15, MDH is authorized to "make or cause to be made inspections relative to compliance with the laws and regulations governing the licensure of child care facilities. Such inspections shall be made at least once a year but additional inspections may be made as often as deemed necessary by the licensing agency." However, the Plaintiffs contend that such duties of inspection regarding child abuse are governed by § 43-21-353, which provides that reports are to be made to the Department of Human Services, who in turn makes a referral to MDH if the abuse allegedly occurs in a licensed child care facility. There have been no facts alleged or raised that MDH received the child abuse tip from the Department of Human Services. However, this misstep does not preclude the Defendants from asserting qualified immunity.

The Fourth Amendment protects individual's expectation of privacy, rather than specific places; if there is no expectation of privacy, individual's right to privacy cannot be violated, and search of such place is not unreasonable and not unconstitutional. A Fourth Amendment search does not occur unless the individual manifested a subjective expectation of privacy in the object of the challenged search and society is willing to recognize that expectation as reasonable. See California v. Ciraolo, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986) (outlining Katz v. United States test for reasonable expectation of privacy, found at 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). The Fifth Circuit has consistently held that "persons who engage in pervasively regulated industries have a diminished expectation of privacy" under the Fourth Amendment. See United States v. Blocker, 104 F.3d 720, 728 (5th Cir. 1997); Donovan v. Dewey, 452 U.S. 594, 598-99, 101 S. Ct. 2534, 69 L. Ed. 2d 262 (1981) (holding that an expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in an individual's home).

To determine whether an industry is "pervasively regulated" such that a diminished expectation of privacy in the workplace is assumed, the Supreme Court, in New York v. Burger, set out the following factors to be analyzed by the lower courts: whether the regulations concerning the activity are extensive; whether an operator can engage in the industry without first obtaining a license, meaning that he must meet the registration requirements and must pay a fee; whether records must be maintained and made available for inspection; whether registration number must be displayed prominently; whether persons engaged in activity are subject to criminal penalties, as well as to the loss of license or civil fees for failure to comply with provisions; whether other states have imposed similarly extensive regulations; and the duration of particular regulatory scheme and history of government regulations. 482 U.S. 691, 703-04, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987).

Section 43-20-8 of the Mississippi Code sets out some of the duties imposed on child care facilities operating within the State of Mississippi. Specifically, the statute requires that child care facilities develop and maintain accurate contact lists for each child at the facility. Further, the statute mandates that facilities check and update current criminal record backgrounds checks and child abuse registry lists often and allow the MDH to make regular investigations of the facilities to make sure they are in compliance with the statute. Other statutes regulating child care facilities govern the procedures and steps that must be taken in order to receive a license, fees associated with licensure, and steps taken for violating those regulations promulgated by MDH.

These regulations must be complied with if operators seek to establish and keep the license necessary for its operation. According to Mississippi Code Section 43-20-9, "no person shall own, operate, conduct or maintain a child care facility in this state without a license." In order to obtain that license, Section 43-20-11 states that the person seeking the license must complete forms and provide required information, shall pay a licensing fee not to exceed $200, and present a certificate of inspection and approval by a local fire department and the MDH. Moreover, the section mandates that "[l]icenses shall be posted in a conspicuous place on the licensed premises." Miss. Code Ann. § 43-20-11.

In order to remain licensed, each child care facility must maintain certain records and make them available for MDH inspection. For example, all facilities must maintain records for the children in the facility, including medical and immunization records, staff records, which include background checks and personnel actions, and safety inspections.

Section 43-20-14 concerns the denial, suspension, or revocation of licenses to child care

facilities and states that the licensing agency may suspend, revoke, or restrict the license of any child care facility for failure to comply with the provisions of the Act or regulations governing the licensing and regulation of child care facilities promulgated by the MDH. Miss. Code Ann. § 43-20-14(3)(c). Indeed, the act states that "[a]ny conduct, or failure to act, that is found or determined by the licensing agency to threaten the health or safety of children at the facility entitles MDH to revoke the license." Miss. Code Ann. § 43-20-14(3)(d). This procedure is in keeping with the overall policy of the Mississippi Child Care Licensing Law that "a child is not capable of protecting himself, and when his parents for any reason have relinquished his care to others, there arises the probability of exposure of that child to certain risks to his health and safety which require the offsetting statutory protection of licensing." Miss. Code Ann. § 43-20-3. Further, although no particular criminal penalties are outlined in the regulations for failure to comply with the provisions, the Plaintiffs have highlighted that § 43-21-353 imposes a criminal investigation where a licensed facility is the site of alleged child abuse, and requires MDH to provide information gathered to law enforcement agencies and the district attorney's office.

The Mississippi Child Care Licensing Law has been present in the Mississippi Code since the publication of those statutes in 1942. A quick glance at surrounding Fifth Circuit states and their child care licensing laws shows equally extensive regulations and time period for implementation. See Tennessee, T.C.A. § 40-19-7465, *et. seq.* (creating minimum standards for licensing of child care facilities similar to Mississippi); Louisiana, R.S. 46:1401, *et. seq.* (creating two state licensing classes for child care facilities; Class A, the more stringent qualification, closely resembles the Mississippi regulations).

Moreover, by accepting a license from MDH, the director has agreed to be subject to search

15

and seizure by licensing agents at any time, with or without a search warrant, and with or without probable cause. See Samson v. California, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006). Accordingly, the court finds today that there is a lower expectation of privacy in a child care facility due to the extensive regulatory guidelines and open access granted to parents of children enrolled there.

Pursuant to Burger, warrantless searches are reasonable, and thus, constitutional if three criteria are met. 482 U.S. at 702-03, 107 S. Ct. 2636. First, there must be a substantial government interest in supporting the regulatory scheme. The government interest in this instance is the regulation of child care facilities and responding to allegations of child care abuse. This interest is related to the health and safety of children which is considered a substantial government interest. Hill v. Colorado, 530 U.S. 703, 715, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000). Second, warrantless searches must be necessary to further the regulatory scheme. In Donovan, the Supreme Court recognized the futility of warning mine owners or operators of impending inspections. 452 U.S. at 600, 101 S. Ct. 2534 (1981). The Court noted that warning of impending inspections would thereby frustrate the purposes of the statute and prevent deterrence of safety and health violations. Id. at 603, 101 S. Ct. 2534. Likewise, here, warnings of impending inspections may prevent MDH from adequately performing their duties and jobs in the securing of health and safety standards for children in child care facilities. The third requirement for warrantless searches to be held reasonable is that the inspection program provides a constitutionally adequate substitute for a warrant. Burger, 482 U.S. at 703, 107 S. Ct. 2636. The Court in Burger stated:

> In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

16

Id. (citations omitted). The MDH is statutorily imbued with the authority to investigate reports of child abuse at a licensed child care facility, as well as compliance with the regulations promulgated for the health and safety of the children in those facilities. Miss. Code Ann. § 43-21-353(8). The Child Care Licensing Laws provides notice that regular and unannounced inspections will occur as often as deemed necessary by the licensing agency. Miss. Code Ann. § 43-20-15. Moreover, those statutes provide notice of how to comply with the law by setting forth regulations and rules which apply to all licensed child care facilities. Miss. Code Ann. § 43-20-1, *et seq.* Accordingly, the MDH officers were sufficiently limited in scope in their search. The agents stated that they were inspecting an allegation of child abuse - which is within their statutory authority - and then searched for licensure violations - which they are statutorily authorized to do. Therefore, the warrantless searches engaged in by the MDH employees were reasonable, and thus constitutional.

Regardless of whether the Defendants violated a clearly established constitutional right or not, however, the Plaintiffs have not carried the burden of proving that the MDH employees' conduct was not objectively unreasonable. Thus, even if the searches were unconstitutional, the agents would be protected from liability due to their objectively reasonable conduct in investigating child abuse allegations, which they are statutorily authorized to do.

Therefore, because there is a lowered expectation of privacy in child care facilities due to the pervasively regulated nature, Defendants' searches were constitutional. See, e.g., New York v. Burger, 482 U.S. at 702-704, 107 S. Ct. 2636 (warrantless administrative inspection of premises of "closely regulated" business deemed constitutional); Michigan v. Tyler, 436 U.S. 499, 507-509, 511-512, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978) (administrative inspection of fire-damaged premises to determine cause of blaze held constitutional); Camara v. Municipal Court of City and

County of San Francisco, 387 U.S. 523, 534-539, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967) (administrative inspection to ensure compliance with city housing code deemed constitutional).

The Defendants are entitled to conduct administrative searches pursuant to Mississippi law, and no notice or probable cause is needed to search such establishments, the MDH and its employees in their individual capacities are protected by qualified immunity from suit. Because the Plaintiffs did not satisfy their burden by putting forth any evidence that the Defendants violated their First, Fifth, and Fourteenth Amendment rights, the Court finds those claims waived.

### *C. Conclusion*

The Plaintiffs have failed to state a claim upon which relief can be granted. The actions on the part of MDH and its employees do not rise to the level of constitutional violations. Therefore, the allegations, even if accepted as true, do not state a claim for a violation of any rights secured to the Plaintiffs under the United States Constitution. Moreover, Defendants actions and conduct during the warrantless searches were not objectively unreasonable.

Accordingly, the Plaintiffs' cause of action is hereby dismissed as no facts alleged entitle them to relief.

A separate order shall this day be issued.

So ordered this the __8th__ day of May, 2008.

                                                      **/s/ Sharion Aycock**
                                                    **U.S. DISTRICT JUDGE**